Jackie Tarleton for Donovan Hall The government agrees that Mr. Hall has established plain error on his reHAVE claim. So the only dispute is whether he has established that affected his substantial rights. It did. At the time Mr. Hall pleaded guilty, he had nothing to lose by going to trial. His guideline range with or without trial was the statutory maximum of 120 months. He did not cooperate or obtain a 5k. No state charges were dismissed as a result of his federal guilty plea. If he had known the government had to prove that he'd been convicted of a crime punishable by more than a year, there is a reasonable probability he would have gone to trial. At the time Mr. Hall possessed a firearm in 2015, he had never served more than nine months in prison after pleading guilty. He had only two legally qualifying felonies, one from 10 years earlier and the other from 15 years earlier at ages 25 and 20 when his frontal lobe was still developing. He was an eighth grade dropout at 15 years old. He'd never been to federal court before, so it would have been unclear to him what the status of his prior convictions would be for federal sentencing purposes. He was a serial misdemeanor in state court, so it's not at all surprising that he wouldn't have known he'd been convicted of a Of course, yes, your honor. My apologies. Just to recap a bit, because I was moving quickly, at the time Mr. Hall possessed a firearm in 2015, he had never served more than nine months in prison after pleading guilty. He had only two qualifying felonies, one was a decade earlier and the other 15 years earlier when he was 25 and 20 years old. Didn't his lawyer tell the judge at the plea hearing or the sentencing hearing, the sentencing hearing, that he only had two felony convictions? He'd been arrested 30 times or something, several times, but only a couple of them were felonies. He had more than two felony convictions under the state's designation, but for purposes of Simmons and the rehafe status. Didn't the lawyer use the term, the counsel, use the term felony? She talked about his prior felonies. She told the judge, in his presence, at the sentencing, he only has a couple of felonies. He's had a lot of arrests, but they haven't been that serious. She was trying to downplay his criminal record, to her credit. He's not as bad as he sounds, he's been arrested a lot, but most everything has been a misdemeanor or has been dropped and only a couple of them are felonies. Something like that. I don't want to quote it, I don't have it in front of me. I remember reading it in this record, maybe several months ago. She did, your honor, but if you're speaking about his knowledge at the time of either the plea or the sentencing hearing, I don't believe that's relevant for rehafe purposes. No, but on the rehafe questions, whether he knew it, I thought, had some knowledge of it, and his own lawyer told the district court. That's what I thought. Is that not relevant? That his own lawyer told the district court in his presence. He's a felon. I don't think it's relevant, your honor, because the question rehafe asks is what Mr. Hall knew at the time he possessed the firearm, which was in 2015, two years prior to the plea and sentencing. Circumstances that could be raised, yeah. So I think the relevant question at this point is what he knew in 2015 and whether there's a reasonable probability that he would not have pled guilty if he knew that the government had to prove that knowledge of status. And what was the time of the guilty plea and what was the time of his own lawyer telling the court in his presence that he's a felon? His guilty plea and sentencing were in 2017, two years after he possessed the firearm. He has. This case has been pending in this court for six years. And so I think it's important to take the court back to that question and that moment in time when Mr. Hall entered his guilty plea and what he knew that the government had to prove. And at that point in 2017, he had no reason to believe and the government had no reason to believe and his lawyer had no reason to believe that his knowledge of status. Had no reason to believe, you say, but based on what this lawyer said at that sentencing, the lawyer knew that he was a felon. You can argue the legal definition of a felon. You can argue that really it wasn't him speaking. He was standing there, I'm sure. His counsel, Your Honor, was not speaking at all to his knowledge in 2015. She was speaking about the legal facts of his criminal history as they existed in 2017 as he went before Judge Boyle for sentencing, which I don't believe is relevant to this court's inquiry today. I think it's important for this court to look both at what the government would have had to prove and what Mr. Hall would have stood to gain by entering a guilty plea rather than pleading guilty. And in this case, as I began my argument, he had nothing to lose. He got no benefit from entering a guilty plea rather than going to trial. So I think this is the unusual case that this court contemplated in Hayward and that the Supreme Court contemplated in Greer where the defendant can in fact make a showing that there's a reasonable probability that if he'd known the correct elements of the offense, he would have gone to trial. I'd like to make two other points about his prior felony convictions. In each, Mr. Hall received a sentence of 11 to 14 months. In the first case, it was suspended. In the second case, it was activated at the outset. But in both cases, under North Carolina state law, Mr. Hall would have been reasonable to believe that he would serve only 11 months. And that's because in the absence of any infractions, that would have been the sentence he would have served, which of course is less than a year. So it's reasonable for him to have believed that any additional time that he served would have been attributable to prison infractions and not to the original offense of conviction. Well, he can't have a reasonable belief that is contrary to fact. I mean, it was punishable by more than a year, right? He has to know, I mean, we can't just excuse that because, well, he thought that it was only punishable by six months. I mean, you know, that's not, I don't exactly know where that goes. I don't think that's quite right, Judge Motz, under Rahafe and Greer, which is that Greer itself contemplates that there could be what they call a confused probationer. Someone who was in fact convicted of a crime punishable by more than a year, but nonetheless did not know he was because, for example, he served no time in prison. So there has to be some meaning to what Rahafe said, which is that even someone who legally has the status of being convicted of a crime punishable by more than a year, there's this additional thing that needs to be proven by the government, and that's his knowledge of that status. And so the mere fact of a qualifying felony conviction cannot be enough, or Rahafe would be meaningless. It could be enough, but I thought that you were suggesting that he didn't know that this was punishable by more than a year. Is that what you're saying? I'm saying there's a reasonable probability he would have gone to trial if he knew the government would have had to make that showing. And so I don't think it's unreasonable for him to have said, I'll roll the dice and go to trial, because I think this is confusing. You rely on Hayward, right? We do. It's a lot weaker case than Hayward, though, isn't it? Well, I think, Your Honor, there are case-specific facts in each of our cases that are distinct from one another, and I don't think that Hayward requires a contemporaneous expressed desire to go to trial in order to result in relief. I think that Mr. Hall has these unique circumstances of his youth at the time of his prior convictions, the fact that he was, in fact, an eighth-grade dropout at 15, so he was already behind in school. He'd never been to federal court before, so he didn't know the status of his prior convictions for federal sentencing purposes. And he was in and out of state court and state prison throughout his life, so it's not at all surprising that he wouldn't have fully understood which period of time was attributable to which conviction. And again, he had nothing to lose by going to trial. So there's no reason for this Court to doubt that if all of this would have had to be proven by the government to a jury in his felon in possession case in 2017, that he reasonably might have gone to trial. I would like to spend a few moments on our Singletary and Rogers claim also. Rogers and Singletary make plain that the remedy for this error is a plenary resentencing. The government has never quarreled with our articulation of Rogers and Singletary error. They seem to agree that the district court failed to orally pronounce 16 of the discretionary conditions to which Mr. Hall was subject. And they've never—excuse me, they have—essentially what they're asking is for this Court to penalize Mr. Hall for winning on another issue in the Supreme Court and then raising this claim after it was decided, which was after the Supreme Court's GVR. So I don't think that that's sensical under this Court's precedence. Judge Monson's decision in Sisson, I think, is informative. Has the government ever conceded the Rogers error? They've never contested it, Your Honor. They've never said— No, that's not what I said. It's what you said. Have they ever conceded it? I don't believe that they've gone so far as to say that. They refused to—they declined to address it. They declined to address it. They declined to address it because a prior panel of this Court denied your request to file a Rogers brief. This Court did not— To brief the Rogers issue. Denied my request to file a supplemental brief. And respectfully, Your Honor, I did not file an additional brief on this issue and simply included it in my principal brief because I think it's so important. I take seriously— But they just simply said, we're not going to reach it. And now they've said, actually, in some papers, that we ruled in their favor by not letting a brief be filed on the merits of it. But I didn't know whether they had conceded the error itself. You said they'd haven't contested it. That's a—I take it to be acknowledgement that they haven't conceded it. They just haven't joined the issue. I don't believe they've ever used the word concede or concession or confess error. But I have noticed in other cases— If it is an error, they don't argue that it isn't. That's correct. And I have seen in other cases where they've said, first of all, this shouldn't be considered by the Court, and also no error exists. And they haven't done that in this case. I would note that this Court generally tends to treat like-click cases alike. In other cases, including Boddy, Everett, Guthrie, Turalba, Amador, Hill, Robinson, Whiteside, this Court has allowed this claim to be considered, even if it wasn't raised in the opening brief filed by the defendant. And, again, the procedural posture of this case is unique in that Rogers and Singletary were not decided until after Mr. Hall had already obtained a GVR victory from the Supreme Court and come back was on abeyance in this Court. What kind of relief would you get out of the Rogers error? Out of Rogers and Singletary, the relief we would request and what this Court has authorized and said is required in Singletary is a plenary resentencing. I would note also that if this Court declines to address this issue, the impact would be that these conditions would be a nullity and Mr. Hall would, in fact, not be subject to them on supervision. I'm not sure that's the result the government would like, but I think that is the natural implication of this Court's decision in Singletary because they were not, in fact, orally announced at sentencing. I'd also like to note, I mentioned this in our brief, these are not sort of ticky-tack conditions of supervision. One of them includes warrantless searches, which is a very significant intrusion on Mr. Hall's liberty, and it was never announced at sentencing. It was just slipped into the written judgment after the fact, especially where such a significant erroneous deprivation of liberty is implicated. I think this Court does need to correct that error by sending it back to the District Court for resentencing. The government has relied heavily on the mandate rule, but I think it's important to recognize the two exceptions to the mandate rule, which are that when there's controlling legal authority that has changed, this Court will address it. Does that implicate the Rogers in Singletary cases? Yes, I think so. Is that what you're saying? I think so. Judge Motz's decision in Sisson is instructive on this point. In that case, the Court said it would blink at reality to say that the argument was just as available before we decided Rogers as it is now. I think that's certainly true. This Court has pulled cases from Anders' briefing to address Rogers in Singletary, and I think it is an important correction that needs to be made. I would also note that government cites in its 28-J letter, its response to my 28-J letter, United States against McCormick, and the footnote that it cites says exactly, when the Supreme Court remands a case with specific instructions, the appellate court must confine its review to the limitations established by the Supreme Court's remand order. Accordingly, this is the important part, absent an argument that there has been intervening controlling precedent, we will not reconsider McCormick's sentence. And what are you arguing? And that's all we've asked this Court to do, is to consider intervening controlling precedent of this Court. You're arguing intervening controlling precedent. Absolutely. Is that your provision? Yes. So you're saying McCormick supports you? Yes. On that point? Yes, I think so. Are you arguing that they've waived any right to contest the Rogers question? I don't think... They refused to brief it? Yes, yes, certainly. And for those reasons, Your Honors, we would ask that this Court vacate Mr. Hall's conviction, and even if it does not, vacate his sentence and remand for re-sentencing under Rogers and Singletary. Any further questions? Thank you, Ms. Tarleton. Mr. Bradgun. I'm a little puzzled about the government's reaction to the Rogers claim. Maybe you can clarify things for me. Well, Your Honor, I'll say a couple things. I think from the government's perspective, we thought that the Court was taking the Rogers claim off the table by denying defendants' request for supplemental briefing. Defendant requested supplemental briefing on this issue. We responded to that, and I'll go into this in more detail in a minute, but we responded that the posture of the case means that this issue is waived, and there was a lot of discussion of whether or not there was a change, a dramatic change in controlling legal authority or not, and this Court ultimately said, denied the request for supplemental briefing. From our perspective, there was... It was included in the defendant's brief, right? Well, I think that the way we understood the request for supplemental briefing, it was to add this as an issue to what the defendant... I understand your argument, but then I'm just asking you as a fact question. In fact, it was included, the Rogers argument was included in the defendant's brief. Yes, it is. And did the government respond to that? We responded only to say that the Court had denied supplemental briefing. So you didn't respond on the issue. We did not respond on the issue. You waived a right to respond to the issue. When you waived the right to respond to the issue, were you waiving a right to come up here and argue today? You haven't briefed the issue for us. Let me tell the Court, first of all, we would concede that there's Rogers' error. So I want to take that off the table. That should have been said in your brief. Your Honor, respectfully, we disagree. We think that when the Court denies supplemental briefing on an issue, that the government should not have to respond on that issue. And I think if the Court wanted us to respond on that issue, it should have granted supplemental briefing. And even now, I think that... You will blame us for the fact that you didn't respond. Your Honor, I think that the Court's... I don't think that our reading was unreasonable in understanding the Court's order  And so we took that as the appropriate response. Now, we do concede error on that issue. And I don't want to shy away from that. What's the relief they get? If the Court does not find this error to be waived, they would get a new trial under... Sorry, a new sentencing under Rogers and Singletary. Plenary sentencing? What's that? Plenary sentencing. Yes, Your Honor. That's what Singletary... That is what Singletary... Other circuits have not applied that remedy, and I think it's an interesting question. That's our question. But this Court has... Rogers and Singletary. Absolutely, yes. That's the remedy that this Court has applied to Rogers' error. Absolutely. And so... But I would like to say a few words to reiterate our opposition to supplemental briefing as to why this issue shouldn't be before the Court. And I think that... Are you sticking by the mandate rule? Yes, Your Honor. Well, the mandate rule, if the case you cite, she read to us, it talks about in the absence of intervening authority. Well, Your Honor, there's a difference between the... It's unpublished anyway. Well, but it cites to this Court's opinion in Bell. And what Bell does is it sets forth what... And it gives exceptions. There's three exceptions. But in general, when a case is caught up on appeal and then comes down, the Court does not reconsider issues that either were resolved by the higher court or were not raised in the higher court. And so in that case, the only exceptions are, one, a dramatic change in controlling authority. And we recognize that exception. But that's very different than the standard... Did McCormick say dramatic change? It does say... Bell says dramatic change. Bell says dramatic change. You don't put... That's not in your letter yesterday. You use the word... You just cite to McCormick. It is in my letter yesterday, Your Honor. And I do believe we cite that language. And we cited Bell and our original opposition. And I think that's part of the reason the Court ruled in our favor on that issue originally. So it's got to be a dramatic change. So we have to ask, what is the controlling authority? Well, the controlling authority was a line of cases that began in United States versus Morse from 1960s, but it continued all the way up until the 2000s. And what that line of cases said was, if something is not pronounced at sentencing, but it's in the judgment, then what was pronounced at sentencing is binding, and anything extra in the judgment is a nullity. That line of cases existed. And so the question is, did Rogers... Was Rogers a dramatic change to that authority? And no, it wasn't. It was just... You're saying Rogers didn't make new law. It was an application of the authority. Now, I agree that if this Court had not gone up to the Supreme Court, the standard is different. The standard for a case that's just pending is whether it's an intervening case is relevant. You're saying that we'd have to resolve this case on the basis of some law that preceded... And ignore Rogers of Singletary. Yes, Your Honor, and I think it's good to remember that this case is six years old. The sentencing occurred in 2017. This Court's opinion occurred in 2018, over five years ago. And this Court resolved issues like procedural and substantive reasonableness. If it sends it back now based on an argument the defendant came up new, it's got to redo those decisions on procedural and substantive reasonableness. You're saying that we've decided the case today on the basis of the law was in effect in 2016, 17? I think... Everything that's happened since then, we have to put aside. Unless it's a dramatic change to a controlling authority, the defendant waives the argument. And the parties get to choose what arguments to raise, and sometimes there's... And if the government doesn't brief it, they waive it too. Well, Your Honor, respectfully, and maybe I completely misunderstood... It's fair for the goose, it's fair for the game. We understood the Court telling the parties not to brief this case. They briefed the issue, and you refused to join the issue. We thought... We believe and still... And you started firing off these letters and coming up today and arguing the issue that you haven't briefed. I'm not arguing that issue. I'm not arguing Rogers Singletary. What I'm arguing is... You concede that there was Rogers there. Absolutely. What I'm arguing is whether or not it was waived. And I think this Court has decided this issue. It decided this issue when it denied supplemental briefing. Denial of supplemental briefing resolves the issue that the briefing would have dealt with? Yes. Okay. Yes, Your Honor. That is my main argument here. Denial of the supplemental briefing is simply an order. There's no explanation attached to it. Correct, Your Honor. If it had said, we deny supplemental briefing because we don't think we need it. But the parties had... Because we understand it and we don't need it. That would... You'd say that's the same thing? Yes, Your Honor. And the parties did fully brief this issue before the Court ruled on it. And so I think the presumption was that the Court agreed with the government's argument on this in denying the supplemental briefing. I am happy to address the Rahife issue as well. But I'll do so only if the Court has questions on that issue. Only have questions? Mr. Alton gave a robust argument about that issue. You said you'd just leave it up to us? Well, Your Honor, I guess maybe I disagree about whether or not it's robust. So I'll be happy to dive into that. To answer Judge King's... Let me just make sure you're not doing us a favor. Are you saying it was not worthy of even responding? Your Honor... That's why I came back to the Supreme Court. Right. I do not consider this... That's why the case is your big argument tonight. I do not consider this to be a close Rahife issue. And defense attorneys have conceded that there was no error in similar cases. But let me address the merits. First of all, to answer Judge King's question, the district court, the defense counsel in district court said the most he's been sentenced to is 11 to 14 months. And so not only did they identify it as a felony, they specifically identified it as a penalty that was punishable by more than a year in prison. Defendant Twice was sentenced to more than a year in prison. He was sentenced to 11 to 14-month sentences. He had three other felonies, but these are the... Under North Carolina law, these are the two that qualify. And in both cases, the judgment was clear that it was 11 to 14-month sentence. The defendant in the acceptance of plea transcript that we submitted, that the defense submitted as part of the supplemental appendix, it shows his statutory maximum as exceeding 12 months in prison. It's conceded that he is in fact was a felon. That's always... But the point was at that time, once... At that point, once that was done, that's all the government had to do. But Ray Ives says, no, it's more. You have to show that he knew that he was a felon. Not the consequences of being a felon, but that he knew. So that's for the whole idea. There are cases where a person could put forth facts that would maybe convince the jury. And that's not even a question. It's not whether he would win or not. The question is whether or not it may change his calculus as to whether he would plead guilty. That's the real way, the window. So you're telling me, so all you talked about, that won't help you. Yes, he is a felon. Done. Question is, did he know that we now know that's an element? So now I want you to address the issues that was put forth. Well, I said robust. You said it wasn't. But I thought it was rather thorough that it laid out what conditions because of his age and situation. In fact, many people associate felony with being in prison for a year. He was not. And all those things like that. I want you to address that. But that's what I think that needs addressing. But if you think that you're finished, then you can sit down. Well, Your Honor, I would be happy to address that. And I would start by saying that Greer does say that felons ordinarily know they're felons. And so it's a high standard on the defense to show why they didn't know. In this case, the defendant at the time of sentencing was 36 years old. So he's not young. He's not young at the time of this crime. And so I don't think there's a lot of evidence that he never contested the fact that he had a felon. He's not young now. But the understanding of the facts then, he was that age. Well, he wasn't. He would have been in his 30s at the time he committed this offense, Your Honor. Offenses that were offenses that made him a felon? No. That's what I'm talking about. The offense of conviction here. I know that. He was 36 today or when? He was 36 at the time he was sentenced in 2017, Your Honor. But that wouldn't necessarily inform what he understood it to be when he was 20 or 25 years old necessarily, would it? Well, he also never contested that he was a felon. And he, in fact, served more than a year imprisonment for each of these two felony offenses. Well, it wasn't relevant at that time whether he contested it or not. The only question was he, in fact, a felon. That's the whole point of Raif. If Supreme Court started this, you know, I'm long in the tooth on this case. So they started it. I thought it was very important. They said it was important. And then Greer comes back and says, well, it's really not because everybody knows that. Well, if that was the case, then why have Raif? But the point is it doesn't make, the point is that the fact that he is is not the question. And then at least there's a window of opportunity was, well, we will say this. Notwithstanding the language you write, I can almost quote it. Everybody ought to know they're a felon. There are cases where a person may not know. And if they can put forth a plausible argument that that may have changed the calculus as to whether they would have pled, that's there. And it seems like you're not addressing that. Well, you don't think that's a fact, the fact of his age and the fact that he didn't spend more than eight months or nine months in prison? You don't think that? Your Honor, he served more than a year in prison on both offenses. In prison? Yeah, absolutely, Your Honor. And defense counsel says he served only eight months after he pled guilty, but he had been serving prison time before then. So the total amount. Was he in jail? Absolutely, Your Honor. I said prison, prison, prison. Oh, sorry. Total amount in custody. The total amount in custody. But people associate prison with, a lot of times, with felony. Well, he went up to the big house for a year. That's a felony. But you don't go to the big house, you go to the local jail, the same place that shoplifters go and all those places like that. You associate with, that's a misdemeanor. And that's the point. The question is not whether he would have won. A jury may have said, he knew. That's different. That's not the question. And counsel said he had nothing to lose. Can you address that? Yes, Your Honor. That's a very important fact in this case. I do disagree with that because I think there's little doubt that if this defendant had gone to trial, he would have gotten a maximum of 120 months. And the court gave him a break of 10 months. It sentenced him to 110 months prison. The court actually didn't want to, even in spite of his plea. And defense counsel argued, hey, give him credit for pleading guilty, among other arguments. And eventually, at the last minute, the court backed down to 110. You all recommended a downward departure. I don't believe that we did in this case, Your Honor. I believe we were... You weren't giving him anything. We were asking for 120 months. The judge said he probably mentioned he could get life. The judge would have given him longer or would have considered it, I think, if the stat max had been longer. And so he did get a 10-month break. And, Your Honor, I would say I do think the overwhelming nature of the evidence that he has this conviction does matter to whether a rational defendant would have made that decision. We can't get into the defendant's head. And so what this court says is we're looking at whether or not an objective defendant in this situation would have made the decision to go to trial based on this issue. And given that he pled guilty to two 11- to 14-month sentences, he signed statements saying that they were punishable by more than a year. He actually served more than a year in custody on each of those. I don't think that any reasonable defendant or rational defendant would have made the decision to go to trial. And he got a benefit. He got a 10-month benefit out of it. I'm not sure about that. You're saying that, you know, the best I can do is get 10 months if I plead. But if I'm able to convince the jury of 12 that I really didn't know because of my age and all of those things, I get zero? You think that's not a bad calculation? Your Honor, I think that there was... Let me ask you, is that a bad calculation? Yes, it's a bad calculation. Really? I disagree with it because I think the chance of him convincing a jury of that... And, Your Honor, I've practiced, I've been a trial attorney a lot longer than I've been an appellate attorney. And the chance of convincing an attorney, a jury in the Eastern District of North Carolina that you didn't know when you actually served more than a year in custody twice, when you're extremely experienced with the state criminal justice system, with all these misdemeanors and everything else, and you signed a paper saying that your crime was punishable up to 30 months, I can't imagine any jury acquitting on that point. And so do you take... It takes one person. Do you take 10 months? Your Honor... It only takes one person on a jury. I disagree, Your Honor. If we have one person, we try it again. And we very often win these cases the second time after an acquittal. It takes 12 people for an acquittal. And defendants who have one person on their favor very often... 12 for a conviction as well. 12 for a conviction, but very often you end up with a second trial. And I just don't think that there's any realistic possibility he could have won this, nor any realistic possibility... What you're doing, in effect, you're writing out what the Supreme Court said. The court asks us to analyze whether an objective person would have made this decision. And I would ask the court to consider this. An objective person would have made that decision? That's the question. Whether a reasonable person in the defendant's position would have decided to go to trial. I'll ask the court this. And the defendant asks his lawyer for advice on what he should be doing. And then you're really going back to a defense lawyer. And ultimately, maybe in this kind of situation, to three judges. That's right. But going back to Greer, Greer says it should be a very high standard to find that a defendant who's committed a felony and guilty of a felony doesn't know he's not a felon. And so the presumption is that it is going to be plain error and not violating his substantial rights. And the circumstances they've recognized exceptions to that have been these unusual three-year misdemeanors where the defendant has contested his conviction in various cases. Who is this they? Sorry. The Fourth Circuit, Your Honor. I apologize. So you have a slew of cases that so hold? We have two that I'm aware of. One is Hayward with the defendant's sites. The other one is Baronet. And in both of those cases... Hayward's case, it seems to me, is a lot stronger than this case here. But anyway, tell me about Baronet. It's very similar, Your Honor. In both of those, it also involved... The case at hand or Hayward? Baronet is similar to Hayward. It also involved a three-year misdemeanor. And the court was concerned... May I finish? I see I'm out of time. The court, I think, in both of those cases was concerned for misdemeanors, it's got to be punishable by more than two years in prison and not just more than one. And the court was concerned in both of those cases that the defendant might not know it was punishable more than two. And in fact, in Baronet, I believe the defendant agreed he had been convicted of a crime punishable by more than a year in prison. And I said, well, that doesn't tell us whether or not you're admitting to a crime punishable by more than two years in prison. And so in those unique circumstances, this court has recognized exceptions. This is very different than this case, and it's not... I do not consider it a close call on the plain error issue. Judge Moss has another question. But in both instances, wasn't the range starting at 11 months? 11 to 14 in this case you're talking about? Yes. Yes, Your Honor. Wouldn't that be some sense that a person could be confused that 11 months would be a misdemeanor if he spent less than that? I know in fact that it's wrong. That's not the question. The point, I should say in law, not in fact, but let's say in law it's wrong because that's the difference. I think that's the key with confusing law and fact. In law, it is a felony. But in fact, people look at facts. Look, I can do 11 months. That's not a year. And therefore, if I have a chance in this sentence to do less than a year, that's not a felony. Now, you think that that's because you're a lawyer. A lot of people who, you know, it's a jury of your peers, not a jury of your lawyers or judges. That's what we're talking about, convincing people who live. A lot of people have a problem with the government in itself. It wasn't about the government ought to make that clear. That wasn't clear to him. He was a young kid. His lobe had not fully developed and things like that, eighth grade education, 15 years old. A lot of people on the jury might have said, no, I don't think that he would have known that. But you come here and say we have to as an appellate court. Yeah, I knew it. You know it. And the jury went, but I think I may have practiced law in terms, maybe as much as you, in terms of defense, criminal defense work. And I've seen jurors do some amazing things. And they call it justice. I don't mean amazing by nullification. I'm talking about amazing by justice. May I answer briefly? Yes, you may answer. Thank you. I do think to address the defendant's age, I think at the time of the second state condition, he was in his mid-20s. And so it's not like we're talking about an 18 or 19-year-old, the second conviction that qualifies. So that's number one. Number two, I do think that most, if not all, defendants would understand that if you get an 11 to 14-month sentence, 14 months is the maximum amount you might serve. Now, you hope that you get the 11. But I think that most defendants would know you might get 14. And all this defendant has to know is that it could be punished by more than 12 months. And I would contend that under the Greer standard that that is met here. Thank you, Your Honor. Yes, I do have a question about the sentence, which no one seems to be so interested in. But let's just assume that we get to the Rogers issue. This sentencing transcript is disturbing, I would say. Would you agree? In what way, Your Honor?  Well, I would say that with respect to the Rogers Singletary issue, certainly the judge did not pronounce the conditions of supervised release. And so I think that, you know, that's the issue I've been focused on with respect to the sentencing. Right, but if you read through it, it seems to me it would be extraordinarily aggressively anti-defendant. Could we agree on that? Oh, yes. I think the court looked at this crime as being very serious, and it saw the crime as being worth perhaps more than the maximum penalty that it was able to face. I agree with that. And some of the language which the district court used was pretty charged. Now, there has been no claim by the defendant that that provides a basis for reversal. But the sentencing, cross-sentencing is before us. And I wonder what you have to say about that, if anything. I appreciate the question. I've never read a record quite like this before. I would say that, you know, judges can sentence in a variety of different ways. Neither this court nor the Supreme Court expects them to do so with no emotion or completely without considering kind of the serious nature of the conduct. In the case of the Rule 11 hearing, this court was very clear to the defendant that he had risked his life by running from the police and put himself in a dangerous situation. And I think it sees this behavior combined with his criminal history as being very serious. Let me ask you about two excerpts. Yes, Your Honor. The judge told Hall that his life before prison was an insult and an assault on the rest of the community. And that if he had died in his life before prison, it would have been a benefit to the rest of the community. And then he expressed exasperation that Hall, a black man, had slipped the noose of ACCA and that he should probably get a life sentence and be thrown away as someone unworthy of freedom in society. Your Honor, I think that the word choice of slip the noose was a very poor word choice given our country's history and potential overturns. You didn't say this, but were you at the sentencing? No, Your Honor, and the attorney who was is actually serving overseas with the Department of Justice right now. Okay, I was just curious. So this goes to the question of if we should find there is error here, it usually goes back to the same district judge. Don't you think there is a rationale for sending this back to a different district judge in view of that language? I think that if the court is, I would prefer not to take a position on that. I'm asking you to take one. I guess my impression, what I would say, Your Honor, is no. I don't think it needs to go to a different judge. Is there ever a basis for us to send a case back to a different district judge then with earlier answer in mind? So you would say no to that too? Yes, there are times when it's appropriate to send. I do not read these comments the same way the court does. I read them as indicating that the court considers this behavior to be very serious. I do not read any racial overtones into it. I don't think that the court had any intent to have any racial overtones in it. I think that what the court was saying was this criminal history is extremely serious and the offense is extremely serious. Well, our standard is whether we think it would be fair to say that the original judge could reasonably be expected to have substantial difficulty in putting out of his mind previously made decisions and that reassignment is advisable to preserve the appearance of justice. Respectfully, Your Honor, I understand the concern, but I just do not see these issues as being something that, to me, I read this transcript and I just read it as indicating the seriousness with how the court felt about the offense and the criminal history, which are appropriate concerns for the court. I do not read it in a different way than that. And based on that, I do not think there's a need to assign it to a judge. You represent the United States, don't you? Yes, Your Honor. A great country, right? Yes, Your Honor. That's founded on freedoms and ideals and principles that every person stands equal for the law, correct? Yes. What did it serve to mention that he was a black man? Can you tell me? I'm going to give you the ire about the crime, the seriousness, the danger, and even you said the slip of the noose comment. But what did it add to it to say that he was a black man? You tell me, because you represent the United States. Judge Motz, I don't remember that specific. JA-33 and JA-32. Okay, thank you. Do you mind if I look at the comment really quick? Chief Judge Greg Motz read it clearly, but go ahead. No, I mean, you know, sure. Sure, but go ahead. Then when you get it, maybe you can read it back to him. Two different sentences. Right, two different sentences. Let's see. Okay, so on JA-32 it says, but I mean the whole idea of ACA is that if you take him, this right here, Mr. Hall, and you take what he did and you profile that against a life of crime, you should not be let out. You should probably get a life sentence and throw you away as someone unworthy of freedom in society. So that's the first. He also talked about slipping the noose. Comment. Yeah, I think that's on 33, right? I have it on 32, but I'll look it up. Okay, let me look up. But I think that your larger point was he didn't say. Well, did he say black man? He knew the man was in front of him. He didn't say black man. Right. I didn't. That's why I. I thought you were reading it. I was reading. Well, you were saying parenthetically a black man. Yeah, exactly. Well, that's better. Thank you, Your Honor. He did say slip the noose. Yes, and I. I'm glad I asked the question because. To be clear, Your Honor, I would have been much more concerned if he had said black man. I think that would indicate a serious problem. Well, fair enough to you. Okay. And fair enough to the judge. Okay. He didn't say. Slip the noose, he said, but he didn't say that. Yes, Your Honor. If there's no further questions from the court, I would ask the court to affirm. All right. Carlton. Carlton. Thank you, Your Honor. I'd like to begin with the Rahafe claim. I think it's important for the court to consider the question. This court has instructed that it be answered in these kinds of cases whether there's a reasonable probability a defendant in Mr. Hall's circumstances would have chosen to go to trial, not whether a jury would have been persuaded or whether that would have been a good idea. Although I will note, incidentally, this court's decision in Lockhart, many judges of this court suggested that no jury would ever find that he'd not known that he was convicted of a felony. In fact, the jury did acquit him on that, on remand. So I think it is possible. And to Chief Judge Gregory's point, it's not always clear exactly what a jury might do. I also think when a defense lawyer is advising their client on whether to plead guilty, there's two sort of pockets of information that are often considered. One is what must the government prove, which we know was defective in this case because no one knew that the knowledge of status element had to be proven to the jury. And the other is what might a defendant gain by pleading guilty. There are a number of ways that can come up in other cases. For example, if a defendant chooses to cooperate to earn a 5K, if the defendant believes that the government is somehow going to concede to a stipulation or a reduction in sentence, if they're going to receive a benefit from acceptance of responsibility, if they're going to have state charges dismissed. None of that happened in Mr. Hall's case. He didn't receive any benefit for entering a guilty plea. And I think looking at these records in our supplemental appendix, they're confusing. And they're confusing to me as a defense lawyer. His sentence was broken up in all kinds of ways. The first sentence of 11 to 14 months was initially suspended. He was given a 36-month probationary term and a 101-day jail credit as a special condition of his sentence. Later, he elected to activate that sentence. He received jail credit from the time leading up to that activation of his sentence. He also received jail credit for the time preceding his guilty plea. And then he went on to serve an active sentence. In the second case, it was an 11 to 14-month sentence. And as I mentioned in opening, the presumption is under North Carolina law that it would be an 11-month sentence unless he committed an infraction of some kind. So it would have been entirely reasonable for him to believe that he was actually sentenced to an 11-month term. I wanted to address briefly also the government's argument on Singletary and Rogers. Essentially what the government is asking this court to do is to penalize Mr. Hall for winning at the Supreme Court because my friend on the other side today conceded. He's conceded now. The government's conceded that you get a remand for rescinding him. They've conceded the error, and I will rest if this court is persuaded. Concedes the Rogers error and concedes that he should be remanded for plenary re-sentencing. And sorry that he didn't brief the issue. Yes, Your Honor, and we believe that that relief is appropriate. So on the Rahafe claim, we would just ask that this court focus its attention on that time frame when he entered his guilty plea in federal court and whether there's a reasonable probability that under the very specific circumstances of this case, he might have elected to go to trial. So we'd ask this court to vacate his conviction on his felon in possession. What about Judge Gregory's question to your colleague or Judge Mott's question? I'm sorry, Judge Mott's question about whether it should go back to the same judge or whether there ought to be a new judge. Your Honor, I... The government wouldn't take a position. I do believe that Judge Boyle has handled a number of cases of defendants of many backgrounds, and I believe that he can be fair in this case, especially after the passage of six years. But I absolutely respect and would defer to this court's decision as to where to remand it. Thank you very much, counsel, the both of you. Appreciate your arguments. I will ask the clerk to adjourn the court until tomorrow morning. We'll come down to Greek County. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Robert B. King, Diana Gribbon Motz